UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------- x

RUBEN BELTRAN and SERGIO BELTRAN,  :

  :          REPORT AND

                        Plaintiffs,  :          RECOMMENDATION

  :

             -against-          :          22-CV-05875 (DG) (PK)

  :

MEC-CON ASSOCIATES, INC.,  :

  :

                   Defendant.  :

----------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Ruben Beltran and Sergio Beltran ("Plaintiffs") brought this action against Mec-Con Associates, Inc. ("Mec-Con" or "Defendant") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq.* (*See* "Am. Compl.," Dkt. 16.)  Plaintiffs have moved for default judgment against Defendant. ("Motion," Dkt. 29.)  The Honorable Diane Gujarati referred the Motion to me for a report and recommendation.  For the reasons stated herein, I respectfully recommend that the Motion be granted in part and denied in part, as set forth below.

## BACKGROUND

### I.    Factual Background

The following facts are taken from the Amended Complaint (Dkt. 16), Affidavit of Plaintiff Ruben Beltran in Support of Motion for Default Judgment ("Ruben Beltran Aff.," Dkt. 29-4), Affidavit of Plaintiff Sergio Beltran in Support of Motion for Default Judgment ("Sergio Beltran Aff.," Dkt. 29-5), and the Declaration of Matthew Madzelan in Support of Plaintiff's Motion for Default Judgment ("Madzelan Decl.," Dkt. 29), and are accepted as true for purposes of the Motion.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

Defendant is a mechanical contractor company providing services related to heating, ventilation, and air conditioning ("HVAC") to customers in New York.  (Am. Compl. ¶¶ 11–12.)

Ruben Beltran worked for Defendant as a laborer from 2015 through 2018 and as a junior mechanic from 2019 through February 2022.  (*Id.* ¶ 14; Ruben Beltran Aff. ¶ 5.)  Sergio Beltran worked for Defendant as a junior mechanic from 2015[1] through February 2022.  (Am. Compl. ¶¶ 16–17; Sergio Beltran Aff. ¶ 5.)  Their duties included "insulation, installing units, piping, duct work and all other duties associated with [HVAC]."  (Am. Compl. ¶¶ 15, 18; Ruben Beltran Aff. ¶ 6; Sergio Beltran Aff. ¶ 6.)  During their employment, Plaintiffs worked from 6:30 a.m. to 4:30 p.m., Monday through Friday, a total of approximately fifty hours per week.  (Am. Compl. ¶ 19; Ruben Beltran Aff. ¶ 7; Sergio Beltran Aff. ¶ 7.)  They were each paid a flat weekly wage of $1,000 per week.  (Am. Compl. ¶¶ 21, 23; Ruben Beltran Aff. ¶ 9; Sergio Beltran Aff. ¶ 9.)  At no time in their employment were Plaintiffs paid overtime premiums for any hours they worked in excess of forty per week.  (Am. Compl. ¶ 29; Ruben Beltran Aff. ¶ 9; Sergio Beltran Aff. ¶ 9.)  Plaintiffs were not provided rest breaks exceeding twenty minutes.  (Am. Compl. ¶ 20; Ruben Beltran Aff. ¶ 7; Sergio Beltran Aff. ¶ 7.)

Plaintiffs were not provided with wage statements reflecting their number of hours worked, regular rate of pay, or overtime rate of pay.  (Am. Compl. ¶¶ 24, 58; Ruben Beltran Aff. ¶ 9; Sergio Beltran Aff. ¶ 9.)  Plaintiffs were also not provided with a wage notice at the time of hire describing their rate of pay, the name of the employer, any "doing business as" names and the main office or principal place of business.  (Am. Compl. ¶¶ 31, 63.)  In addition, Defendant did not compensate Plaintiffs for their overtime hours at a rate of 1.5 times their hourly rate of pay.  (*Id.* ¶ 53.)

---

[1] The Amended Complaint inconsistently states that Sergio Beltran worked for Defendant from in or around 2007 through February 2022 (Am. Compl. ¶ 16) and also that he began employment in 2015.  (*Id.* ¶ 2.)  Because the Affidavit of Sergio Beltran states he began employment in 2015 (Sergio Beltran Aff. ¶ 5), the Court uses 2015 as the start of his employment.

## II.    <u>Procedural Background</u>

Plaintiffs filed the Complaint on October 2, 2022 and amended it on March 31, 2023 to remove individual defendants.  (Dkt. 16.)  Plaintiffs alleged that Defendant violated overtime provisions of the FLSA and the NYLL, and failed to provide a wage notice under NYLL § 195(1) and wage statements under NYLL § 195(3).  (Am Compl. ¶¶ 33–65.)

Plaintiffs served the Amended Complaint on Defendant on May 11, 2023.  (Dkt. 19.) Defendant failed to answer or otherwise respond to the Amended Complaint.  (Aug. 30, 2023 Order.) Plaintiffs requested a Certificate of Default against Defendant (Dkt. 21), which the Clerk of Court entered on October 6, 2023.  (Dkt. 23.)

Plaintiffs filed the initial Motion for Default Judgment on October 30, 2023.  (Dkt. 26.)  After the Court noted that the Plaintiffs' Motion did not attach the Amended Complaint, the Clerk's Certificate of Default, or proof of mailing the Motion papers to Defendant (Jan. 25, 2024 Order), Plaintiffs withdrew their initial motion and filed the current Motion.  (Dkt. 29.)

<b>DISCUSSION</b>

## I.    <u>Default Judgment Standard</u>

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment.  First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default.  Fed. R. Civ. P. 55(a).  The plaintiff may then move the court for an entry of default judgment.  Fed. R. Civ. P. 55(b)(2).  "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right."  *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).  The plaintiff must demonstrate proper service of the summons and complaint, *see Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013), and establish compliance with the procedural requirements of Local Civ. Rules 7.1 and 55.2.

3

The court must assure itself that it has subject matter jurisdiction and may also examine whether it has personal jurisdiction over the defendant. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125, 133 (2d Cir. 2011). The court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84. "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

In the context of a motion for default judgment on FLSA and NYLL claims, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established . . . ." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II. Jurisdiction and Default

### A. Subject Matter Jurisdiction

The Court has original subject matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §

1367.

### B.    Service on the Defendants

Plaintiffs served the Amended Complaint on Defendant by delivering a copy of the Summons and Complaint to the New York Secretary of State. (Dkt. 19.) This constitutes proper service. *See* N.Y. Bus. Corp. Law § 306(b)(1); Fed. R. Civ. P. 4(h)(1)(B).

### C.    Personal Jurisdiction

"[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)). New York has general jurisdiction over corporations formed under its laws and operating within the state. *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018). Because Defendant is a New York corporation and was properly served, the Court has personal jurisdiction over Defendant.

## III.    Procedural Compliance with Local Civil Rules 7.1 and 55.2[2]

Plaintiffs filed the following in support of the Motion: a copy of the Clerk's Certificate of Default against Defendant (Dkt. 29-2), *see* Local Civil Rule 55.2(b)(1); a copy of the Amended Complaint (Dkt. 29-1), *see* Local Civil Rule 55.2(b)(2); a Proposed Order of Default (Dkt. 29-7), *see* Local Civil Rule 55.2(b)(3); and proof of mailing the Motion papers to Defendant at its last known business address (Dkt. 31), *see* Local Civil Rule 55.2(c).

Plaintiffs did not attach a Notice of Motion, *see* Local Civil Rule 7.1(a)(1) or a Memorandum of Law in Support of the Motion, *see* Local Civil Rule 7.1(a)(2). I find that these omissions are minor

---

[2] Because the Motion was filed on February 13, 2024, references herein to the Local Civil Rules mean the Local Civil Rules that were in effect until June 30, 2024.

and did not prevent Defendant from receiving notice of the motion or the basis for the motion. The Declaration of Matthew Madzelan in Support of Plaintiff's Motion for Default Judgment (Dkt. 29) gives notice of the motion for default judgment and is functionally equivalent to a memorandum of law because it contains legal analysis supported by case law. *See Trustees of Loc. 813 Pension Tr. Fund v. Argento Rubbish Removal, Inc.*, No. 22-CV-5683 (FB)(PK), 2023 WL 5961658, at *4 (E.D.N.Y. Aug. 21, 2023), *R&R adopted as modified*, 2023 WL 5956787 (E.D.N.Y. Sept. 13, 2023).

Accordingly, Plaintiffs' non-compliance with the Local Civil Rules is excused.

## IV.    Liability under the FLSA and NYLL

### A.    Statute of Limitations

The FLSA statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful' and the three year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-0133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010), *R&R adopted*, 2010 WL 2927403 (E.D.N.Y. July 19, 2010)). "The statute of limitations starts to run when the employee begins to work for the employer." *Id.* (citation omitted).

Under the NYLL, the statute of limitations is six years. *See* NYLL §§ 198(3), 663(3).

Plaintiffs commenced this action on October 2, 2022, alleging violations that occurred during their employment from 2015 to 2022. Because Defendant has defaulted, I find that the violations are willful and the three-year FLSA statute of limitations applies. Plaintiffs may accordingly recover under the FLSA for any claims that accrued starting on October 2, 2019. Under the six-year NYLL statute of limitations, Plaintiffs may recover for any claims that accrued starting on October 2, 2016.

## B.     *Employment Relationship Under the FLSA*

The FLSA is to be "construed . . . liberally" because its "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 296 (1985) (quotation and citations omitted).  To plead a cause of action under the FLSA, a plaintiff must establish that: (1) defendants are employers subject to the FLSA; (2) plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Rowe v. CC Rest. & Bakery, Inc.,* No. 17-CV-1423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *R&R adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).  Courts in the Second Circuit have "treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141–42 (2d Cir. 2008).

### 1.     Whether Defendant is an Employer

The FLSA broadly describes an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013).

A defendant is an employer under the FLSA if it meets the criteria for either enterprise or individual coverage.  *See Rowe*, 2019 WL 4395158, at *4.  The individual coverage test considers the "employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'"  *Id.*  Even if the plaintiffs are not themselves engaged in commerce, a defendant may meet the enterprise coverage test if the defendant has employees engaged in commerce or in the production of goods for commerce, "or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. §

203(s)(1)(A)(i–ii); *see also Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Even local activities may meet this test if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)).

Plaintiffs allege that Defendant engaged in interstate commerce and had gross revenues in excess of $500,000 per year. (Am. Compl. ¶¶ 36–37.) Plaintiffs' allegations do not specify the connection to interstate commerce, but I find that the descriptions of Defendant's work are sufficient to establish that Defendant was an employer under the enterprise coverage test. *Huerta v. Victoria Bakery*, No. 10-CV-4754 (RJD)(JO), 2012 WL 1107655, *2 (E.D.N.Y. Mar. 30, 2012) (court can "infer[] the requisite interstate commerce connection under [a] sensible approach . . . ."). Although Defendant operated as a mechanical contractor company within New York state, it is highly likely that the company used goods, such as tools and parts, that were transported in interstate commerce. *See Cabrera v. Canela*, 412 F. Supp. 3d 167, 174 (E.D.N.Y. 2019) ("To decline to make reasonable inferences of interstate commerce in cases like this would frustrate the FLSA's remedial purpose and would give employers perverse incentives to default in FLSA actions, where plaintiff workers may lack specific information about their employers' distribution networks."); *see also Brummell v. K1 HVAC Inc.*, No. 19-CV-5488 (FB)(RML), 2021 WL 3888138, at *3 (E.D.N.Y. Aug. 13, 2021) (inferring that despite similarly conclusory allegation, "the tools, equipment, and [HVAC] parts allegedly handled by defendants' employees [in installing and repairing HVACs] 'have been moved in or produced for [interstate] commerce'" (third alteration in original)). While Plaintiffs have not provided any additional evidence that Defendant earns more than $500,000 in gross revenue annually, Plaintiffs' conclusory allegations are sufficient in light of Defendant's default. *See Castillo v. RV Transp., Inc.*, No. 15-CV-

0527 (LGS)(JCF), 2015 WL 13746672, at *2 (S.D.N.Y. Dec. 21, 2015), *R&R adopted as modified*, 2016 WL 1417848 (S.D.N.Y. Apr. 11, 2016) (accepting bare allegation that enterprise took in $500,000 in gross revenue as sufficient in light of default).

Accordingly, I find that Defendant is an employer under the FLSA.

<h4>2.    <u>Whether Plaintiffs were Employees</u></h4>

An "employee" under the FLSA is likewise broadly defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Plaintiffs allege that they were employed by Defendant. (Am. Compl. ¶ 34; Ruben Beltran Aff. ¶ 5; Sergio Beltran Aff. ¶ 5.) Plaintiffs' allegations establish that they were employees under the FLSA.

<h4>3.    <u>Whether any FLSA exemption applies</u></h4>

Finally, Plaintiffs must show that they are not exempt from the FLSA's protections. *See* 29 U.S.C. § 213. The Amended Complaint pleads sufficient facts to establish that Plaintiffs are non-exempt employees under the FLSA. Ruben Beltran was employed as a laborer and later as a junior mechanic (Am. Compl. ¶ 13), and Sergio Beltran was employed as a junior mechanic (*id.* ¶ 17). Their work included "insulation, installing units, piping, [and] duct work" (*id.* ¶¶ 15, 18), which are non-management roles. *See* 29 C.F.R. § 541.3(a) ("non-management employees in maintenance, construction and similar occupations such as . . . mechanics . . . and laborers" are not exempt under the FLSA). Accordingly, the facts pleaded in the Amended Complaint establish that Plaintiffs constitute non-exempt employees under the FLSA.

<h3>C.    *Employment Relationship Under the NYLL*</h3>

To prevail on a NYLL claim, Plaintiffs must establish that their employment relationship with Defendant falls within the NYLL, which applies to "any person employed for hire by an employer in any employment." NYLL § 190(2). "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v.*

*Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status).

As the NYLL and the FLSA definitions of "employer" are coextensive, *see Fermin*, 93 F. Supp. 3d at 37, I find that Defendant was Plaintiffs' employer within the meaning of the NYLL.

## D.   Overtime Claims

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than 1.5 times the regular rate of pay for any hours worked in excess of forty per week . . . ." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* NYLL §§ 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2). To support "a reasonable inference" that he or she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of the 40 hours of work in a given workweek, *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency of the[ir] unpaid work." *See Nakahata*, 723 F.3d at 201; *see also Fermin*, 93 F. Supp. 3d at 44–45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim).

Plaintiffs allege that during their employment, they worked approximately fifty hours per week (from 6:30 a.m. to 4:30 p.m. Monday through Friday) and were paid a flat salary of $1,000 per week. (Am. Compl. ¶¶ 19, 21, 23; Ruben Beltran Aff. ¶¶ 7, 9; Sergio Beltran Aff. ¶¶ 7, 9.) They were never paid any overtime wages even though they worked over forty hours per week. (Am. Compl. ¶¶ 23; Ruben Beltran Aff. ¶ 9; Sergio Beltran Aff. ¶ 9.) Accordingly, I find that Defendant is liable for failure

to pay Plaintiffs overtime under both the FLSA and the NYLL.  *See Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM)(RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (plaintiff's sworn statement estimating his schedule and pay established that he worked over forty hours a week without time-and-a-half compensation, subjecting defendants to liability under FLSA and NYLL on default).

### E.     Wage Notice and Statement Claims

Plaintiff alleges violations of NYLL §§ 195(1) and 195(3), the statute's wage notice and statement provisions.  (Compl. ¶¶ 68, 72.)  These provisions are also referred to as the Wage Theft Prevention Act ("WTPA"), which was enacted "to expand the rights of employees and to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein."  *Cuzco v. F & J Steaks 37th St. LLC*, No. 13-CV-1859 (PAC), 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014) (quoting Bill S8380–2009, Revised 06/29/10, Summary of Specific Provisions).  Section 195(1)(a) requires employers to provide employees at the time of hire with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, the pay schedule, and information identifying the employer in both English and the primary language of the employee.  Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  NYLL §§ 198(1-b) and 198(1-d) impose statutory damages for violations of these provisions.

In order to have Article III standing in federal court, plaintiffs must show that they suffered a concrete and particularized injury-in-fact.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992); U.S. Const. art. III, § 2, cl. 1.  Bare allegations of an "informational injury," unaccompanied by allegations of adverse effects or downstream consequences from failing to receive the required information, are insufficient to establish Article III standing.  *TransUnion LLC v. Ramirez*, 594 U.S.

413, 442 (2021); *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022). "In other words, [the plaintiff] must show that he has an 'interest in using the information . . . beyond bringing [his] lawsuit'" to establish an Article III injury-in-fact. *Id.* (citing *Laufer v. Looper*, 22 F.4th 871, 881 (10th Cir. 2022)).

Before the Supreme Court's decision in *TransUnion LLC v. Ramirez*, courts within the Second Circuit found that bare allegations of WPTA violations satisfied the injury-in-fact requirement because a WPTA plaintiff identified "procedural deficiencies that entail a concrete risk of harm to an interest identified by the legislature." *See, e.g., Imbarrato v. Banta Mgmt. Servs., Inc.*, No. 18-CV-5422 (NSR), 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020), *abrogated by Jackson v. ProAmpac LLC*, 694 F. Supp. 3d 352, 363 (S.D.N.Y. Sept. 25, 2023); *see also Strubel v. Comenity Bank,* 842 F.3d 181, 189 (2d Cir. 2016) ("Where Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient risk of real harm to the underlying interest to establish concrete injury without need [to] allege any additional harm beyond the one Congress has identified.").

In *Transunion*, however, the Supreme Court explicitly rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement when an informational statutory violation occurs, stressing that "an injury in law is not an injury-in-fact . . . ." *Id.* at 426–27 (quoting *Spokeo, Inc. v. Robins*, 578 U. S. 330, 340 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation")).

Applying *Transunion*, a majority of courts in the Second Circuit that have considered WTPA standing have held "that a plaintiff lacks standing to recover for a wage notice or statement violation . . . when the plaintiff pleads nothing more than the statutory violation and a demand for damages." *Montalvo v. Paul Bar & Rest. Corp.*, No. 22-CV-1423 (JLR)(SN), 2023 WL 5928361, at *3 (S.D.N.Y. Sept. 12, 2023) (collecting cases). Courts have required a plaintiff to "link" a defendant's failure to provide her with wage information to the failure to lawfully compensate her. *See Gaskin v. Brooklyn*

*Suya Corp.*, No. 22-CV-5648 (ENV)(LB), 2023 WL 9232962, at *8 (E.D.N.Y. Oct. 26, 2023) (collecting cases).

In a handful of cases, however, courts have found that WTPA standing is established even without specific allegations of downstream harms. *See, e.g.*, *Bueno v. Buzinover*, No. 22-CV-2216 (PAE)(KHP), 2023 WL 2387113, at *3 (S.D.N.Y. March 7, 2023) (rejecting magistrate judge's recommendation that there was no standing and finding that harms resulting from wage notice and statement violations can be considered concrete "without requiring a specific showing as to the downstream impact on the plaintiff of the non-provision of the required notice" by considering the legislature's purpose in enacting the statute); *Bello v. Pro-Line Pumping Corp.*, No. 22-CV-4081 (RPK)(RML), 2023 WL 8260830, at *9 (E.D.N.Y. June 20, 2023) (bare assertion that plaintiffs never received wage statements and notices were sufficient to establish concrete harm and standing because they were accompanied by claims of wage theft, and "the realization of the downstream harm the statute seeks to prevent—wage theft—is evident on the face of the pleadings").

While it may be evident from the pleadings that wage theft has occurred, it is not always the case that such theft flows from the informational deficiency of not receiving the wage notice or statements. It is possible for a plaintiff to have obtained knowledge of the information that would otherwise be in the required records through other means. And wage theft sometimes occurs even in the face of full knowledge. Thus, I agree with the majority line of reasoning. After *Transunion*, a bare allegation of a statutory violation no longer suffices to satisfy standing without an additional allegation of some link between the failure to provide wage notice or statements—with their concomitant information—and some concrete injury, such as the wage theft alleged elsewhere in the pleadings.

Here, Plaintiffs allege throughout the Amended Complaint that they were not provided with wage payment statements or notices indicating their rate of pay or number of hours worked. (Am. Compl. ¶¶ 24, 30, 31, 32, 56–65.) However, Plaintiffs fail to explicitly allege the connection or "link"

13

between Defendant's failure to lawfully compensate them and failure to provide the required information under the NYLL. Therefore, I find Plaintiffs' allegations insufficient to demonstrate injury for Article III standing, and therefore liability, for violations of NYLL §§ 195(1)(a) and 195(3).

## V.    Damages

### A.    *Overtime Damages*

Plaintiffs are entitled to an overtime premium for all hours worked over forty per week at 1.5 times the greater of their regular rate of pay or minimum wage under both the NYLL and the FLSA. *Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-5303, 2018 WL 9945754, at *4, *8 (E.D.N.Y. Oct. 17, 2018).

Under the FLSA, the regular rate of an employee who is paid a flat weekly salary is "computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a); *see, e.g., Torres v. Jin Xiang Trading Inc.*, No. 17-CV-2866 (RJD)(PK), 2020 WL 9814080, at *8 (E.D.N.Y. Mar. 12, 2020) (calculating plaintiffs' regular hourly rates by dividing their fixed weekly salaries by the number of hours the compensation was "supposed" to cover). Courts in New York "have consistently held that the NYLL follows the FLSA in how it calculates statutorily required overtime pay." *Wills*, 981 F. Supp. 2d at 252–53; *see also Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086 (MKB), 2016 WL 2909966, at *9 (E.D.N.Y. Mar. 18, 2016), *R&R adopted*, 2016 WL 2758272 (E.D.N.Y. May 12, 2016) (noting that New York law's formula to calculate the regular rate of an employee who is not paid on an hourly basis is similar to that of 29 C.F.R. § 778.112).

Here, Plaintiffs were paid a flat weekly wage of $1,000 and worked consistently for fifty hours per week. (Am. Compl. ¶¶ 19, 21.) Accordingly, I find that their regular rate of pay was $20.00 per hour. (*See* Damages Chart, Dkt. 26-1.) Because Plaintiffs were only paid their regular rate of pay for all hours worked, they are entitled to an additional 0.5 times their regular rate for the ten hours they worked over forty per week throughout their employment, as set forth in the following table:

| Plaintiff | Overtime Premium (0.5 x Regular Rate of Pay) | Overtime Hours per Week | Number of Weeks (Oct. 2, 2016 – Feb. 28, 2022)[3] | Total Overtime Payments Owed |
|---|---|---|---|---|
| Ruben Beltran | $10.00 | 10 | 281 | $28,100.00 |
| Sergio Beltran | $10.00 | 10 | 281 | $28,100.00 |

Accordingly, I respectfully recommend that Ruben Beltran and Sergio Beltran each be awarded $28,100.00 in unpaid overtime wages.

### B.    Liquidated Damages

Plaintiffs may recover liquidated damages under either the FLSA or NYLL equal to the amount owed for unpaid overtime compensation. 29 U.S.C. § 216(b); NYLL § 198(1-a).

If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, a court may decide not to award liquidated damages. 29 U.S.C. § 260; *see* NYLL § 198(1-a) (granting same good-faith exception to liquidated damages). Because Defendant did not respond to the Motion, there is no showing of good faith, and liquidated damages are appropriate. *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages—that is, liquidated damages under both the NYLL and FLSA. *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). Plaintiffs may therefore be awarded liquidated damages pursuant to the NYLL or the FLSA and may elect the higher amount. *See Charvac v. M & T Project Managers of N.Y., Inc.*, No. 12-CV-5637 (CBA)(RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015), *R&R adopted as modified*, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015).

Because the FLSA statue of limitations precludes recovery for violations occurring before

---

[3] Plaintiffs calculated their damages based on an employment period of 308 weeks starting from March 28, 2016, to February 28, 2022. (Dkt. 29-3.) However, because of the NYLL statute of limitations, Plaintiffs are only entitled to relief beginning from October 2, 2016.

April 14, 2020, I recommend each Plaintiff be awarded $28,100.00 in liquidated damages based on unpaid overtime wages under the NYLL.

### C.    Prejudgment Interest

Plaintiffs also seek prejudgment interest under the NYLL.  Prejudgment interest is available for underpayments under the NYLL, which in this case consists of overtime claims.  *See* NYLL § 198(1-a); *Fermin*, 93 F. Supp. 3d at 30.

In New York, prejudgment interest accrues at the statutory rate of nine percent per year.  N.Y. C.P.L.R. § 5004.  "Where [] damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  *Id.* § 5001(b).  Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994).  "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered."  *Perez Campos*, 2018 WL 9945754, at *8 (citing *Fermin*, 93 F. Supp. 3d at 49).  Other courts have used the midpoint between the first and last dates of the plaintiff's NYLL claims.  *See, e.g.*, *Hernandez v. NJK Contractors, Inc.*, No. 09-CV-4812 (RER), 2015 WL 1966355, at *51 (E.D.N.Y. May 1, 2015).

Plaintiffs' overtime claims under the NYLL cover the period from October 2, 2016 to February 28, 2022.  The midpoint—for purposes of calculating prejudgment interest of underpayments—is June 16, 2019.  Each Plaintiff's overtime damages are $28,100.00.  Prejudgment interest on those damages at a rate of nine percent per year is $2,529.00. That amount divided by 365 days in a year results in a daily interest rate of $6.93.  Accordingly, I respectfully recommend that Plaintiffs each recover prejudgment interest at a daily rate of $6.93 from June 16, 2019 through the entry of judgment.

### D.    Post-Judgment Interest

Post-judgment interest is mandatory.  *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004); *see* 28 U.S.C. § 1961(a) (post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court" and "shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment"); *Lamaka v. Russian Desserts Inc.*, No. 18-CV-7354 (ILG)(VMS), 2021 WL 2188280, at *18 (E.D.N.Y. Feb. 12, 2021), *R&R adopted*, 2021 WL 2184870 (E.D.N.Y. May 28, 2021) (awarding post-judgment interest despite plaintiff's failure to request it). Accordingly, I recommend that each Plaintiff recover post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### E.    Fifteen Percent Increase Penalty if Damages not Paid within Ninety Days

Plaintiffs do not seek an automatic increase of fifteen percent for any unpaid amount of the judgment still pending after ninety days, as provided for at NYLL § 198(4).  However, that provision mandates that "any judgment or court order awarding remedies under this section *shall provide* that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."  NYLL § 198(4) (emphasis added); *see also Rodriguez v. Solares Corp.*, No. 16-CV-3922 (CBA)(SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *R&R adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019).  This award is therefore mandatory, regardless of whether Plaintiffs request it or not.

The increase applies only to damages awarded under state law.  *See Solares Corp.*, 2018 WL 7252949, at *12 (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *see also De la Cruz Casarrubias v. Surf*

*Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *R&R adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Solares Corp.* and limiting conditional fifteen percent enhancement to damages awarded under the NYLL). Accordingly, Plaintiffs' damages under the NYLL should be increased by fifteen percent if Defendant fails to timely satisfy the judgment within ninety days.

## VI.    Attorney's Fees and Costs

Prevailing plaintiffs are allowed to recover reasonable attorney's fees and costs under both the FLSA and the NYLL. *See* 29 U.S.C. § 216(b); NYLL § 663(1).

Plaintiffs request $14,530.00 in fees and $1,057.00 in costs. (Madzelan Decl. ¶ 5.)

### A.    *Attorney's Fees*

District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request. *Mahoney*, 2016 WL 6585810, at *18. Courts must "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Century 21 Real Est. LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation and citation omitted).

"[T]he lodestar [method]—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cty. of Albany & Albany Cty. Bd. Of Elections*, 522 F.3d 182, 183 (2d Cir. 2008)). Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits…." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted). "If the Court finds that some of the time [the attorney billed] was not reasonably necessary[,] it should reduce the time for which compensation is awarded accordingly." *Mister Softee, Inc. v. Konstantakakos*,

18

No. 15-CV-4770 (SJ)(SMG), 2016 WL 11445964, at *6 (E.D.N.Y. June 27, 2016), *R&R adopted*, 2016 WL 4250314 (E.D.N.Y. Aug. 11, 2016) (quotation and citation omitted).  "Where time entries are vague, duplicative, or otherwise inadequate, a court may make 'an across-the-board reduction, or percentage cut, in the amount of hours.'"  *Id.* (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 09-CV-0451 (SJF)(ARL), 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011)).  "Inadequate documentation" is another "ground[] for reduction of a fee award."  *Bercosa Corp.*, 666 F. Supp. 2d at 299 (citation omitted).

       1.   <u>Reasonable Hourly Rate</u>

Plaintiffs request attorneys' fees for work done by Matthew Madzelan ("Madzelan") and Jayne Calderon ("Calderon").

Madzelan was admitted to the New York bar in 2013 and has approximately eight years of experience in employment litigation with a focus on wage-and-hour and discrimination law.  (Dkt. 29-6.)  He is an associate at Bell Law Group, PLLC.  (*Id.*)  Madzelan billed at a rate of $300.00 per hour for his work on this case.  (*Id.*)

Courts in this District have awarded hourly rates ranging from $200.00 to $325.00 for senior associates in FLSA cases.  *Martinez v. New 168 Supermarket LLC*, 19-CV-4526 (CBA)(SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (collecting cases), *R&R adopted*, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020).  I find that $300.00 per hour is a reasonable rate for an attorney with Madzelan's experience in a routine FLSA case.  *See, e.g.*, *Kotuwage v. NSS Petrol. Inc.*, 15-CV-4374 (FB)(ST), 2019 WL 1370692, at *2 (E.D.N.Y. Mar. 6, 2019), *R&R adopted as modified sub nom., Kotuwage v. Bilt Petroleum, Inc.*, 2019 WL 1370091 (E.D.N.Y. Mar. 26, 2019) (finding that $300.00 is a reasonable hourly rate of a senior associate with nine years of experience); *Rodriguez v. Yayo Rest. Corp.*, No. 18-CV-4310 (FB)(PK), 2019 WL 4482032, at *9 (E.D.N.Y. Aug. 23, 2019), *R&R adopted*, 2019 WL 4468054 (E.D.N.Y. Sept. 18, 2019) (finding $325.00 to be the appropriate rate for plaintiff's attorney who

graduated law school in 2012).

Plaintiffs provide no information regarding Jayne Calderon's ("Calderon") title or experience. (Dkt. 29-6.) Calderon billed at a rate of $100.00 per hour for her work on Plaintiffs' case. (*Id.*) Because the contemporaneous timesheet submitted by Plaintiffs describes Calderon's involvement in Plaintiffs' case as "[n]ew client file prep" (*Id.*), I infer that Calderon worked in the capacity of a paralegal. I find that $70 per hour is a reasonable rate for her work. *See Ahn v. Sun Cleaners Inc.*, No. 19-CV-5919 (DLI) (PK), 2022 WL 586022, at *11 (E.D.N.Y. Feb. 18, 2022), *R&R adopted*, 2022 WL 7186026 (E.D.N.Y. Feb. 1, 2022) (recommending $70 per hour for paralegal with time billed but no description of their credentials); *see Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SFJ) (AYS), 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020) (same).

2.    Reasonableness of Time Billed

Plaintiffs request attorneys' fees for 46.4 hours of Madzelan's legal tasks, 4.1 hours of Madzelan's administrative tasks, and two hours of Calderon's work. (Dkt 29-6.)

Plaintiffs seeking attorneys' fees must submit contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "[T]o determine whether the number of hours spent by Plaintiff's counsel was reasonable, the Court must 'use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" *Litkofsky v. P & L Acquisitions, LLC*, No. 15-CV-5429 (DRH)(AKT), 2016 WL 7167955, at *10 (E.D.N.Y. Aug. 19, 2016), *R&R adopted sub nom. Ira Litkofsky v. P & L Acquisitions LLS*, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016) (alteration in original) (quoting *Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)).

Here, Plaintiffs submitted contemporaneous time sheets showing work performed in this case from March 25, 2022, to October 30, 2023. (Dkt. 29-6.) In calculating Madzelan's total hours,

Plaintiffs do not seek fees for the time expended in withdrawing the initial Motion for Default Judgment and re-filing the corrected Motion. (*Id.*) Plaintiffs also distinguished Madzelan's legal tasks from his administrative tasks related to email correspondence or filing documents. (*Id.*)

Therefore, I find the hours billed to be reasonable.

3.   Calculating the Recommended Fee Award

Multiplying the reasonable hours by the reasonable rates set forth above, the presumptively reasonable fees are set forth in the following table:

| Biller | Requested Rate | Reasonable Rate | Requested Hours | Reasonable Hours | Total Fees (Reasonable Rate x Reasonable Hours) |
|---|---|---|---|---|---|
| Matthew Madzelan | $300.00 | $300.00 | 46.4 | 46.4 | $13,920.00 |
| Matthew Madzelan (administrative tasks) | $100.00 | $100.00 | 4.1 | 4.1 | $410.00 |
| Jayne Calderon | $100.00 | $70.00 | 2.0 | 2.0 | $140.00 |
| | | | Total | 52.5 | $14,470.00 |

Accordingly, I respectfully recommend that Plaintiffs be awarded $14,470.00 in attorneys' fees, as this amount equals eighty-five percent of the total amount of fees with the adjusted reasonable rates.

**B.    Costs**

Plaintiffs seek costs in the amount of $1,057.00, representing $402.00 in filing fees, $540.00 for service of the Complaint, and $115.00 for service of the Amended Complaint. (*Id.*) "Costs relating to filing fees, process servers, postage, and photocopying are ordinarily recoverable." *Teamsters Loc. 815 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). Plaintiffs have provided documentation substantiating the requested fees. (Dkt. 32).

Accordingly, I respectfully recommend that Plaintiffs be awarded $1,057.00 in costs, representing the filing fee and the process server fees.

**CONCLUSION**

Based on the foregoing, I respectfully recommend that the Motion be granted as to

Defendant's liability for overtime violations but denied with regard to failure to provide a wage notice and wage statements.  I respectfully recommend that damages be awarded under the NYLL as follows:

- $28,100.00 to Ruben Beltran for unpaid overtime wages;

- $28,100.00 to Ruben Beltran in liquidated damages;

- $28,100.00 to Sergio Beltran for unpaid overtime wages;

- $28,100.00 to Sergio Beltran in liquidated damages;

- $14,470.00 in attorneys' fees; and

- $1,057.00 in costs

I further recommend that prejudgment interest be awarded at a daily rate of $6.93 from June 16, 2019, until the date of judgment. In addition, post-judgment interest shall accrue thereafter until payment of the judgment amount, and a fifteen-percent increase in penalty if damages under the NYLL are not paid within ninety days of judgment or the expiration of time to appeal.

Any written objections to this Report and Recommendation must be filed within fourteen days of service of this report.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).


**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge


Dated:    August 21, 2024
          Brooklyn, New York